IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ELWOOD SMALL,
  Plaintiff,
  v.        Case No. 3:08-cv-44-KRG-KAP
JOSEPH W. VISINSKY, ANNETTE
KOWALEWSKI, FRED R. MAUE, M.D.,
and RICHARD ELLERS,
  Defendants

## Report and Recommendation

### Recommendation

I recommend that defendants' motion for summary judgment, docket no. 34, be granted and plaintiff's motion for summary judgment, docket no. 35, be denied. Plaintiff's request for entry of default, docket no. 40, is denied. The Clerk shall terminate defendant Visinsky's motion to strike, docket no. 42, as moot.

### Report

As was set out at the motion to dismiss stage, see docket no. 31, docket no. 33, plaintiff is an inmate at S.C.I. Laurel Highlands who claims that in mid-2006, after he was transferred from S.C.I. Houtzdale to S.C.I. Somerset for arthroscopic surgery by Dr. Kates at Somerset Hospital on July 26, 2006, there was a delay in his receipt of physical therapy. Plaintiff alleged that defendant Visinsky transferred him back to Houtzdale on August 1, 2006, knowing that Dr. Kates had prescribed physical therapy which was provided only at Laurel Highlands. Plaintiff alleged that once he was returned to Laurel Highlands, defendant Kowaleski failed to ensure that physical therapy began until September 15, 2006.

I ordered the parties to file cross motions for summary judgment pursuant to Celotex Corp. v. Catrett, 477 U.S. 317, 326 (1986), which permits a district court to order summary judgment sua sponte so long as the parties are notified that they must come forward with all relevant evidence. The record made by plaintiff and defendant shows at that at the most there was a period of about six weeks, from the beginning of August until mid-September 2006, during which plaintiff's receipt of post-operative physical therapy was limited to plaintiff performing pendulum exercises and range of motion exercises on his own. The plaintiff and defendants spend most of their time analyzing the record on what state of mind - justified, negligent, deliberately indifferent - the defendants had toward plaintiff's need for physical therapy during this time[1]. It

---

1. There is no evidence that either defendant denied the plaintiff treatment, or even had any motive to deny care to an inmate who needed it. It makes no sense at all for the personnel actually involved in the administration of medical care to sabotage their own department, thereby costing them, even when there is no lawsuit, the expense of additional or repeated treatment of an inadequately healed inmate. The absence of any plausible motive for defendants to engage in the conduct alleged is relevant to whether a genuine issue of fact exists within the meaning of Rule 56(e). Matsushita Elec. Ind. Co. v. Zenith Radio, 475 U.S. 574, 596-97 (1986). The same is true when the dispositive question is the mindset, not conduct, of the defendant. For plaintiff to prove a defendant liable there must be evidence from which a juror could reasonably conclude that defendant Visinsky or defendant Kowaleski was "aware of facts from which the inference could be drawn that a substantial risk of serious harm" existed to plaintiff if there were a delay in plaintiff's receipt of physical therapy. Further, they must actually have made that inference. Farmer v. Brennan, 511 U.S. 825, 837 (1994). There is no such evidence in the record of either element.

is unnecessary to belabor that point because of a more serious defect in plaintiff's case: there is no competent evidence that plaintiff's alleged injury was caused by defendants[2].

Plaintiff cannot prove his Estelle v. Gamble claim without expert evidence because, unless a medical "matter ... is so simple, and the lack of skill or want of care so obvious as to be within the range of ordinary experience and comprehension of even nonprofessional persons," expert testimony is necessary to establish the defendants' failures in meeting the standard of care (in this case deliberate indifference), the causation of injury, and in some cases the extent of the injury. See Brannan v. Lankanau Hospital, 490 Pa. 588, 417 A. 2d 196, 201 (1980), quoting Chandler v. Cook, 438 Pa. 447, 451, 265 A.2d 794 (1970); Geibel v. United States, 667 F. Supp. 215, 219 (W.D.Pa.1987), aff'd, 845 F.2d 1011 (3d Cir.1988). Estelle v. Gamble presents some claims under the Eighth Amendment where no expert testimony would be needed to show a culpable state of mind, for instance if a prison doctor decided to throw away an inmate's ear and stitch the stump rather

---

2. It is not controverted that Pennsylvania Department of Corrections has provided extensive medical care to plaintiff, including surgery on July 26, 2006. It is an assumption which radiates throughout plaintiff's pleadings that any denial in or delay of any subunit of care to him by personnel at Pennsylvania Department of Corrections is, despite the totality of care provided, a separate constitutional violation. To an extent the defendants accept plaintiff's terms of argument by focusing only on postoperative care, and I will do likewise. But it is necessary to point out that plaintiff's assumption does not frame the issues and is not evidence.

3

than to treat the inmate after an altercation, or decided to inject a prisoner with penicillin when the doctor knew that the inmate is allergic. 429 U.S. at 104 n.10. A non-Estelle v. Gamble case from the Court of Appeals, Bushman v. Halm, 798 F.2d 651, 658-59 (3d Cir.1986), presents an example of a medical claim (an FTCA claim applying New Jersey law) where no expert testimony would be needed to show causation. In Bushman v. Halm the appellate panel held that expert testimony was not necessary to prove that the government's action caused plaintiff's alleged injuries because the causal mechanism was obvious: plaintiff was driving his truck, his truck was struck head on by a Postal Service jeep, and plaintiff claimed that his knees began to hurt immediately after the collision. The inference "impact causes pain to part of body impacted" is one within the province of a layman. By contrast, the plaintiff offers his own testimony that what he calculates as a several weeks delay in receiving physical therapy **caused** him a **permanent** loss of range of motion. See Plaintiff's Concise Statement of Facts ¶43 and ¶82. As defendants object, docket no. 45, plaintiff is not competent to offer an opinion on that point.

First, "physical therapy" is not a unitary concept, and as plaintiff's own exhibits show, different therapies might be appropriately begun at different times. For instance, pendulum exercises may begin almost immediately after surgery (as they were in this case), followed by isometric exercises in the first week

4

or two after surgery, then passive range of motion exercises a few weeks after surgery, followed by resistance exercises four to six weeks after surgery. [I have used as my example the ranges given in "What to expect after Shoulder Surgery" at http://www.ehealthmd.com/library/arthroscopyshoulder/ARS_recovery.htmleven (visited February 18, 2009)] Plaintiff's assertion that he was injured by a delay in "physical therapy," by which he means the final stage of physical therapy, is simplistic and ascribes almost magical status to the therapist. Assuming the usual range in medical opinion, it is very possible that plaintiff did not suffer what any doctor would consider a delay. Since there is nothing in the record to indicate when each stage of physical therapy ought to begin in plaintiff's case (much less that defendants were aware of that date) plaintiff lacks an indispensable element of his case.

Second, even when a range of physical therapy is provided there is a primary component of self exercise, exercise which in this case was prescribed to the plaintiff by Dr. Kates. Plaintiff acknowledges that Kara Cornell came and explained pendulum exercises to him immediately after surgery and that a physical therapist would see him the following week. See Plaintiff's Concise Statement of Facts ¶40. Defendants describe further treatment which I leave aside simply because plaintiff does not acknowledge it. Looking only at plaintiff's chronology, because

5

plaintiff was transferred back to Houtzdale and then to Laurel Highlands, the physical therapist, Roger Mason, did not evaluate plaintiff until August 18, 2006[3]. This is still only four weeks post surgery. Mason's recommendation was hot packs and range of motion therapy **after** plaintiff was released from the RHU. See Plaintiff's Concise Statement of Facts ¶61. That recommendation was overruled by a nurse named Lechene, but even at Dr. Kates' teleconference with plaintiff on September 8, the recommendation that plaintiff reports Kates as making was "to persist with his exercises." See Plaintiff's Concise Statement of Facts ¶69. Plaintiff cites nothing to indicate Kates believed plaintiff to have suffered or be at risk of suffering injury simply because he was still at the self-exercise stage of his recovery (much less that defendants were aware of this belief and acting in spite of it).

---

3. Plaintiff asserts that it is significant that Mason wrote on August 15, 2006, that plaintiff needed physical therapy "before his shoulder stiffens up." See Plaintiff's Concise Statement of Facts ¶72. However, upon seeing plaintiff, Mason believed therapy could be deferred until after plaintiff left the RHU, a fact that completely reverses the inference plaintiff desires the court to draw. While physical therapy is standard after a shoulder operation, there are obviously degrees of surgery and degrees of urgency for various therapies. Nowhere in the record is there any circumstantial evidence that defendants disregarded a particular order of treatment by anyone who believed that treatment necessary (as opposed to routinely ordered), much less a "smoking gun" in which some medical personnel examined plaintiff and found him harmed by a delay.

Finally, plaintiff agrees that he did receive physical therapy on September 15, 22, 26 and 29, 2006, while in the RHU at Laurel Highlands. See Plaintiff's Concise Statement of Facts ¶73. This is less than the number of therapeutic events scheduled by defendants. See Plaintiff's Concise Statement of Facts ¶71. Let me assume that the finder of fact were to believe only plaintiff's recollection and further were to disbelieve Pennsylvania Department of Corrections' medical records. Let me assume also that the discrepancy could be entirely laid at the door of defendant Kowaleski (since there is no claim that defendant Visinsky had any responsibility for any decision after the two week interval before plaintiff was transferred to Laurel Highlands). It is nonetheless not in dispute that after plaintiff's surgery and even at Houtzdale before the transfer to Laurel Highlands nurses and physician assistants were advising plaintiff about range of motion exercises and noting that physical therapy would begin when the surgeon's recommendations were received.

It is therefore not possible for plaintiff to claim that during the period of time from the day of his surgery until the day he acknowledges he was provided with physical therapy he was "deprived of physical therapy," not least because a good deal of physical therapy for plaintiff after his shoulder surgery was to be done by plaintiff on his own. For plaintiff to assert that a delay (in his view) in receiving certain modes of physical therapy

(necessary in his view[4]) caused him an injury (which in his view is permanent) requires the finder of fact to accept plaintiff not just as an expert, but as three experts.

No reasonable finder of fact could return a verdict for plaintiff because he has no competent evidence to support proof of an element of his claim on which he bears the burden of proof. Summary judgment must therefore be entered for defendants.

Pursuant to 28 U.S.C.§ 636(b)(1), the parties are given notice that they have ten days to serve and file written objections to this Report and Recommendation.

DATE: 18 February 2009

Keith A. Pesto,
United States Magistrate Judge

Notice by ECF to counsel of record and by U.S. Mail to:

Elwood Small AM-9183
S.C.I. Laurel Highlands
P.O. Box 631
5706 Glades Pike
Somerset, PA 15501-0631

---

4. Supposing the plaintiff had a July 2006 medical report from Dr. Kates saying plaintiff needs active resistance exercises three times a week or he will suffer permanent loss, and a note signed by defendants which acknowledged Dr. Kates' prescription but which without reason ordered plaintiff to receive exercises only once a month. Plaintiff would have adequate evidence of deliberate indifference, but he would still have to prove that the defendants' action had caused him an injury. Here, plaintiff lacks evidence of either deliberate indifference or causation.

8